[No. 38301.   Department One.   May 26, 1966.]

J. A. McKINNON et al., *Appellants*, v. WASHINGTON FEDERAL SAVINGS AND LOAN ASSOCIATION et al., *Respondents*.*

*Reported in 414 P.2d 773.

*Frederick Paul,* for appellants.

*Williams, Lanza, Kastner & Gibbs* and *William D. Cameron,* for respondent Washington Federal Savings and Loan Association.

BARNETT, J.†—This appeal is taken from an order of dismissal against plaintiffs in their action to recover damages for personal injuries suffered by Mrs. McKinnon as the result of a fall sustained on the property of defendant Washington Federal Savings and Loan Association. In the complaint, plaintiffs alleged that defendants had breached the duty of care owed Mrs. McKinnon, an invitee. Pretrial depositions and written interrogatories were taken. At the commencement of the trial, defendants moved to dismiss. Argument was heard and the motion was granted upon agreed facts, *i.e.,* those most favorable to plaintiffs, as evidenced by the depositions, offers of proof, certain exhibits, and the colloquy of counsel before the court. These undisputed facts follow.

On March 5, 1962, defendant Washington Federal Savings and Loan Association opened its doors for business in the Snohomish County community of Lynnwood. To mark this occasion, the association conducted an "open house" for a period of 3 days. During this time, a 4 by 8 foot sign was displayed within the premises, which bore the following:

This room and adjoining kitchen facilities are available for the free use of local clubs and organized groups for meetings and conferences, either during regular office hours or in the evenings. Arrangements can be made in

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

advance by contacting any one of the staff members. Courtesy of Washington Federal Savings.

Several organizations did, in fact, make use of the association's facilities for regular meetings,[1] one of which was Girl Scout Group 1147, which met there three times a month, and had done so from the time the premises became available.

The rooms utilized by the various groups consisted of a kitchen and a conference room located at the rear of the business premises. It was the practice of the Girl Scout group to enter the meeting room through the back door of the building, the key to which was usually obtained by one of the adult leaders from an employee of defendant association. A cement sidewalk, some 4 feet in width, approached the building at an oblique angle, then jutted to the left so as to meet the rear wall—and back door—of the building at a right angle. Near the inside apex of the angle formed by the sidewalk, some 3 inches from its edge, was a sprinkler nozzle. This device, part of an underground sprinkler system owned by the association, projected upward to a point somewhat above the level of the adjacent sidewalk. A view of the sidewalk, the sprinkler nozzle, and the rear of the building is shown by the photograph on the following page, an exhibit in the case.

In the evening of March 19, 1964, plaintiff Muriel McKinnon, adult leader of the Girl Scout group, approached the back door of the association's premises, where a meeting was then scheduled. As she walked along, Mrs. McKinnon swung her left foot over the edge of the sidewalk, caught the sprink-

[1]The following is a list of additional groups and organizations which used defendant's premises for their meetings on a regular basis: Sea View Weavers Guild—1 evening a month; Edmonds Junior Chamber of Commerce—2 evenings a month; Pacific N.W. Boxer Club—1 evening a month; Edmonds Junior Chamber of Commerce Wives—2 evenings a month; Alanon Family Group—1 evening a week; Up & Kummin' Grandmother's Club—1 afternoon a month; League of Women Voters—2 mornings a month; Republican Club of Snohomish County—1 day a month; Mountlake Terrace Junior Chamber of Commerce Wives—1 evening a month; Edallynn Club—1 evening a month; Lynnwood Society of Christ Scientists—every Sunday; Lynnwood Junior Chamber of Commerce—1 evening a month; Lions Club—1 evening a month.

ler head, and went sprawling, sustaining the injuries for which she now seeks redress.

In granting defendants' motion to dismiss, the court entered the following order:

The above-entitled action came on regularly for trial on October 21, 1964, and at the beginning thereof Washington Federal Savings and Loan Association moved for an order of dismissal in the nature of summary judgment based upon the depositions of Muriel McKinnon and James H. D. Young heretofore filed and published herein, and upon defendants' Exhibit 1, being a photograph, and

upon plaintiffs' Exhibit 2, being a large cardboard sign, and upon the offer of proof by the above-named plaintiffs, and upon the agreed facts as contained in the colloquy between counsel and the court, all of which are a part of the record herein; now, therefore, the court hereby

FINDS that the occasion of Mrs. McKinnon's visit to defendant Association's premises was not commercial or contractual in nature nor was it of any material or pecuniary benefit, actual or potential to the defendant Association.

Therefore, the court further finds as a matter of law that plaintiff wife was a licensee to whom the defendant Association owed only the duty of not wilfully or wantonly injuring. As a further matter of law, there was no breach of that duty. Now, therefore, it is hereby

ORDERED, ADJUDGED AND DECREED that the above-entitled action shall be and the same is hereby dismissed as against defendant Washington Federal Savings and Loan Association, with prejudice and with costs taxed in said defendant's favor.

We must decide whether the trial court committed error in concluding, from the agreed facts, that Mrs. McKinnon was a mere licensee upon the association's premises on the occasion of her fall.

To a licensee, as to a trespasser, an occupier of land owes no duty except, generally, to refrain from willfully or wantonly injuring him. *Dotson v. Haddock,* 46 Wn.2d 52, 278 P.2d 338 (1955). The law exacts of the owner or occupier a greater duty of using ordinary care to keep the premises in a reasonably safe condition when a visitor, who has attained the status of an "invitee," comes upon his premises. *Ward v. Thompson,* 57 Wn.2d 655, 359 P.2d 143 (1961); *Enersen v. Anderson,* 55 Wn.2d 486, 348 P.2d 401 (1960). The suitor's status, then, is often a determinative factor in his quest for compensation for injuries suffered while on the land of another. Unless he can establish himself as an invitee, he must shoulder the formidable burden of proving defendant's willful or wanton misconduct.

From as early as *Gasch v. Rounds,* 93 Wash. 317, 160 Pac. 962 (1916), this court has applied the so-called "eco-

nomic benefit" test in determining whether an entrant to one's land is an invitee. Under this test, an invitee is one who is either expressly or impliedly invited onto the premises of another for some purpose connected with the business in which the owner or occupant is then engaged. To qualify as an invitee or business visitor under this definition, it must be shown that the business or purpose for which the visitor comes upon the premises is of actual or potential benefit to the owner or occupier thereof. *Dotson v. Haddock, supra.* It is reasoned that an owner or occupier is under no affirmative duty to make the premises safe for visitors unless he expects to derive some measure of economic benefit from their presence. That is, the affirmative duty of reasonable care is said to be thrust upon the owner as the *quid pro quo* for the expected benefit. 2 Harper and James, Torts § 27.12 at 1478 (1956); Prosser, Torts § 61 at 396 (3d ed. 1964).

Prosser, *supra,* states at 399 that courts in other jurisdictions—"the great majority"—apply an alternative test to determine whether a particular entrant is to be considered an invitee. This alternative test, called the "invitation" or "public invitation" test, does not regard the factor of economic benefit as essential. Rather it bases "invitation" upon the fact that the occupier, by his arrangement of the premises or other conduct, has led the entrant to believe that the premises were intended to be used by visitors, as members of the public, for the purpose which the entrant was pursuing, and that reasonable care was taken to make the place safe for those who enter for that purpose. 95 A.L.R.2d 992, 995; 2 Harper and James, *supra.* In the words of Prosser, *supra,* at 398:

> [T]he basis of liability is not any economic benefit to the occupier, but a representation to be implied when he encourages others to enter to further a purpose of his own, that reasonable care has been exercised to make the place safe for those who come for that purpose. This idea of course underlies the stress laid upon "invitation" in so many of the cases; but, as in the case of the social guest, invitation is not enough without the circumstances which convey the implied assurance. When premises are thrown

open to the public, the assurance is ordinarily given;
. . . . It is the implied representation made to the
public, by holding the land open to them, that it has been
prepared for their reception, which is the basis of the
liability.

The stress is laid upon the *invitation* aspect and the representations implied thereunder, rather than upon the subjective *purpose* for which the visitor enters. Even under this test, however, an express invitation, without more, is insufficient to vest one with the mantle of an invitee. The courts reach near unanimity in holding that a purely social guest does not come within the class. Harper and James, *supra,* at 1479-1480. The same authority, at 1478, submits that "under the prevailing rule today, plaintiff may, and should be, classified as an invitee if either the economic benefit or the invitation theory is satisfied."

Heretofore, this court has not expressly adopted the invitation test. Although we did advert to it in *Ward v. Thompson, supra,* it was not necessary to the decision in that case. Today we have decided to adopt the broader definition of the invitee to include those who fall within the purview of the invitation test as well as those who qualify as invitees under our long-standing economic benefit test. We find our decision buttressed by the latest revision of the Restatement of Torts, in which the economic benefit test was rejected as the exclusive means of determining the status of the invitee. Restatement (Second), Torts § 332 (1965) defines an "invitee" as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

In applying the invitation test in *Dowd v. Portsmouth Hospital,* 105 N.H. 53, 58, 193 A.2d 788, 95 A.L.R.2d 986 (1963), the court, on rehearing, remarked:

Perhaps the most significant support for the invitation test appears in Restatement (Second), Torts, s. 332 (Tentative draft No. 5, 1960). This authority bluntly states that restricting the class of invitees to only those who meet the economic benefit test is "out of line with the holdings of the great majority of the cases which have considered the question." . . . It appears that this authority also has modified its former stand . . . .

We think it consonant with fundamental principles of justice that the broader test should be adopted. We agree with those authorities and writers who argue that the economic benefit test, used alone, is unsatisfactory, in that it does not adequately explain the many cases in which entrants are found to be invitees. A recurring result of the application of this test has been a strained construction of the "business visitor," whereby, for the purposes of achieving a just result, courts often indulge in rhetorical gymnastics in order to pull the facts before them into the category of the economic benefit test. It is for these reasons that we have decided to apply the broader test as promulgated by the Restatement of Torts, *supra*.

The undisputed facts indicate that a segment of the public was invited by defendant association to use its building for group meetings. Under these circumstances, it was incumbent upon defendant to exercise reasonable care in making the premises safe for purposes for which they had been held open. On these facts we hold as a matter of law that plaintiff was an invitee at the time of her fall.

From a review of the evidence, we have determined that the issues of defendant's negligence and plaintiff's contributory negligence are properly for jury determination.

The order of dismissal is reversed, and the cause is remanded for proceedings not inconsistent with this decision.

ROSELLINI, C. J., HILL, OTT, and HUNTER, JJ., concur.

September 7, 1966. Petition for rehearing denied.