[No. 38555. Department Two. March 2, 1967.]

MARILEE FOSBRE, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant*.*

*Reported in 424 P.2d 901.

The Attorney General, Earl E. Yates, Special Assistant, and Dean A. Floyd, Assistant, for appellant.

Foster & Foster and Bassett, Donaldson & Hafer, for respondent.

BARNETT, J.†—This is an appeal from a judgment entered in favor of the plaintiffs by the court sitting without a jury in an action for damages. The plaintiff, Marilee Fosbre, was awarded $157,164.

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2 (a) (amendment 38), state constitution.

The action is based upon the alleged negligence of the defendant, state of Washington, in not maintaining a log boom in such a fashion as to prohibit boats from entering a swimming and wading area. The swimming and wading area is on property known as Camp Murray located on American Lake in Pierce County. The property is owned by the state of Washington.

The plaintiff was injured on the middle Sunday of the annual 2-week field training period of the Washington Army National Guard, of which plaintiff's father was a member at that time. For a period in excess of 35 years, the middle Sunday of the annual 2-week field training encampment of the National Guard has been known and observed as "Family Sunday" or "Visitor's Sunday," a time when the families and friends of the guardsmen are welcomed to the camp. The activities of the day include a meal in a mess hall for the visitors, a general inspection of the camp to observe recreational activities and how the part-time soldiers live. Camp Murray touches upon the southeasterly portion of American Lake, and is extensively used for recreational purposes. Barlow Island, a pear-shaped island approximately one acre in size, is immediately adjacent to the military reservation and is owned by the defendant. One side of the island is some fifty yards from the mainland and the defendant placed log booms across the water from each end of the island to the mainland, thereby forming a closed area for the purpose of providing a protected swimming and wading area. The military department of defendant has improved this swimming area extensively, bringing in sand for the beach, erecting and maintaining kitchen facilities, electricity, piped water, flush toilets, a bath house, picnic tables and other recreational facilities. The beach is patrolled by civilian employees of defendant and the area is restricted by signs and cyclone fences to the use of the National Guard Personnel, their families and guests. During the summer months, the National Guard also maintained several trailers at the beach which were available to National Guard families on a weekly rental basis.

On the middle or "Family Sunday" the plaintiff came with her family, which included several other children, to visit her father's military unit and see how a soldier lives during annual field training. At noon the family had lunch in the mess hall at the Northeast Fort Lewis encampment, and later the children had jeep and airplane rides. At approximately 3:30 p.m., the plaintiff's family left the training area and went to the Camp Murray beach area, across Highway 99 from the training area.

The Fosbre family joined other National Guard families at the beach area and the 6-year-old plaintiff and her 3-year-old sister changed into their swimming clothes at the bathhouse and entered the shallow water to wade.

Defendant's officers were aware that the log boom at one end of the island had become separated by a storm some weeks before "Family Sunday" and it had not been repaired by defendant due to a lack of time and the pressure of other work. The defendant fully recognized the inherent danger of boats in the swimming area, and among other precautions, the adjutant general, through the provost marshal, had issued a written directive declaring that "Boats were not allowed in the logged off swimming area."

Before plaintiff and her family arrived at the beach, an outboard motorboat had been pulled up on the beach within the restricted area, out of the water and out of operation. After the plaintiff and her younger sister had been wading for a short time, the motorboat was floated out into the water some distance from the two girls. The motor was started and the operator lost control of the boat and it headed in shore toward the plaintiff and her sister. The motorboat was being driven by Larry B. Rusbuldt and had entered the swimming or wading area through a gap in the log boom which existed as a result of the log boom separating during a storm on the lake. The boat hit both girls, the younger child being pushed out of the path of the boat, but the plaintiff was run over and the propeller amputated her right arm about two and one-half inches from her shoulder and causing other injuries.

The defendant has made six assignments of error and argues the first four together as raising the question of the nature of defendant's duty to plaintiff. It is argued that the plaintiff is a social guest, a mere licensee, and the duty owed by defendant is not to injure such licensee wantonly or willfully.

We cannot agree with the defendant's interpretation of the facts in this case. She was a public invitee.

In the recent case, *McKinnon v. Washington Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 414 P.2d 773 (1966), we adopted Restatement (Second), Torts § 332 (1965) which defines an invitee as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

It was held by this court in *McKinnon, supra,* that a visitor upon the premises of a savings and loan company was an invitee as a matter of law where the visitor was a member of a civic group which was using a portion of the premises in response to a public invitation extended to certain organized groups to use such portion of the premises, at no charge, for their own meetings or conferences.

In deciding *McKinnon, supra,* we said at 651: "The undisputed facts indicate that a segment of the public was invited by defendant association to use its building for group meetings. In the instant case a segment of the public, namely, the National Guardsmen, their families and their friends, over a period of years had been invited to enter Camp Murray for the purposes of picnicking, swimming and wading and other such recreational activities at the beach area. We see no difference between the National Guardsmen and their families and friends and the groups invited to use the premises in *McKinnon, supra.*

The plaintiff and her family, as members of a segment of the public, entered Camp Murray in response to an invitation to use the beach area and did use it for the exact purposes for which it had been improved and maintained and for which it was held open. As a public invitee, the plaintiff was owed a duty of reasonable care by the possessor of the land, the defendant, to prepare and make the premises safe.

In its opening brief, defendant does not argue the questions of causation and negligence. However, in its reply brief, it argues that there is a lack of proximate causation between the alleged negligence of defendant, *i.e.,* failure to maintain the log boom and the plaintiff's injury which resulted from the active unforeseen negligence of the operator of the motorboat. In this connection, it is contended that finding of fact No. 5 to the effect that Larry B. Rusbuldt navigated the boat into the restricted beach area is not borne out by record. In other words, it is defendant's position that there is no evidence as to how the boat gained access to the restricted waters. We note, however, the defendant even said in its opening brief:

> The motorboat was being driven by Larry B. Rusbuldt and had entered the swimming or wading area through a gap in the log boom which existed as a result of the log boom separating during a storm on the lake.

The defendant did assign error to finding of fact No. 5, but it did not argue the boat access question in the opening brief. We consider those points not argued and discussed in the opening brief abandoned and not open to consideration on their merits. *State v. Davis,* 60 Wn.2d 233, 373 P.2d 128 (1962); *Kent v. Whitaker,* 58 Wn.2d 569, 364 P.2d 556 (1961). In addition, a contention presented for the first time in the reply brief will not receive consideration on appeal. Rule on Appeal 41; *Washington Fish & Oyster Co. v. G. P. Halferty & Co.,* 44 Wn. 2d 646, 269 P.2d 806 (1954); *Turner v. Department of Labor & Indus.,* 41 Wn.2d 739, 251 P.2d 883 (1953).

The trial court found, " . . . as the proximate result of the . . . negligence of defendant, one Larry O.

[sic] Rusbuldt navigated an outboard motor boat into said beach area, lost control thereof and ran the same into and over plaintiff. . . ." This finding is proper. The law of proximate causation on these facts is well settled in this state. It does not require that the negligence of a defendant must be the sole cause of the injury complained of in order to entitle the plaintiff to damages therefor, and the connection between a negligent act and an injury is not broken by an intervening event which occurs so naturally in the course of events that it might reasonably have been anticipated by the wrongdoer. *Hosea v. Seattle*, 64 Wn.2d 678, 393 P.2d 967 (1964); *Adler v. University Boat Mart, Inc.*, 63 Wn.2d 334, 387 P.2d 509 (1963); *Wright v. City of Kennewick*, 62 Wn.2d 163, 381 P.2d 620 (1963).

The trial court's finding and conclusion that the defendant was negligent and this negligence was the proximate cause of the plaintiff's injuries is correct.

The defendant has also presented challenges to the trial court's award of damages to the plaintiff.

At the time of its oral decision, the trial court awarded the plaintiff $43,456 for special damages and $125,000 for general damages. At the time the findings of fact, conclusions of law, and judgment were presented to the court for signature, defendant's attorney pointed out to the court that while the complaint alleged special damages of $43,456, only $7,164 had been proved at the trial and therefore the judgment of $168,456 should be reduced by $36,292 to $132,164. The trial court agreed with defendant that plaintiff was not entitled to any special damages not proved and reduced the special damages award to $7,164. At the same time, however, the trial court increased the general damages award from $125,000 to $150,000. To this increase, the defendant assigns error.

■ We find no prejudicial error. An oral decision is not a judgment. The trial court can freely change its mind until a formal judgment is entered. *Earl v. Geftax*, 43 Wn.2d 529, 262 P.2d 183 (1953); *State ex rel. Wilson v. Kay*, 164 Wash. 685, 4 P.2d 498 (1931).

Even though there is a substantial difference between the general damages orally announced by the trial court and those ultimately awarded, the judgment is amply borne out by the record as hereinafter elucidated.

The second contention is that the award to the plaintiff of $150,000 in general damages is excessive. At the time of the accident, the plaintiff was a healthy, normally right-handed, 6-year-old girl, having a life expectancy of 58 years and 336 days. As a result of being struck by and run over by the motorboat, the plaintiff's right arm was amputated just several inches from her shoulder by the boat's propeller. Other injuries were a 3-inch laceration over the right ear, another laceration on the right calf, and abrasion on the right thigh. The amputation left this little girl with a two-and-one-half-inch stump. The plaintiff's injuries are permanent and in the future will adversely affect other areas of her body. For example: Her right side and right leg are now becoming smaller because of a lack of use of muscles on her right side and this atrophy will continue.

The plaintiff has experienced, and in the future will continue to experience, intense pain, suffering, humiliation and embarrassment. Because of the loss of her right arm, the plaintiff was forced out of established thought and action patterns into developing new patterns in conjunction with the differing use of her left arm. This is a difficult obstacle to surmount. The effect of the loss of the arm on her social, family and community life will manifest itself to greater degrees as this girl becomes a teenager and then matures into womanhood. The shortness of the portion of the arm left, which itself will atrophy, minimizes the effective, beneficial use of an artificial arm so that even the simplest mechanical operations such as tying her shoes, dressing without difficulty, throwing, grasping, holding, pulling, turning and reaching are beyond her ability. The loss of the arm and the lack of a remaining portion of that arm to effectively use an artificial limb hinders the vocational capacity of the plaintiff and also greatly burdens her life in view of her normal anticipation of becoming a wife and a mother.

■ In approaching the question of the guidelines for determining whether the trial court erred in its award of damages, we have said:

For an interpretation of the facts found and the amount of damages awarded, we may consider the opinion of the trial court to test whether it has acted upon a wrong principle of law, has misapprehended the facts, or has made a wholly erroneous estimate of the damages suffered; otherwise, the alleged excessiveness of an award of damages by a jury (absent passion and prejudice) and by a trial judge should be tested by the same rules. *Malstrom v. Kalland*, 62 Wn.2d 732, 736, 384 P.2d 613 (1963).

■ And we continued on to say in *Malstrom, supra*, 738:

The conclusion reached by an appellate court in reviewing the alleged excessiveness of an award of damages by a jury or *trial judge* for personal injury must be the result of tipping the balance between two sets of factors.

"On the one hand, the following must be considered: Each cause depends, to a large extent, upon its own facts and circumstances. The verdict must be compensatory of a pecuniary loss. *Walters v. Spokane International R. Co.*, 58 Wash. 293, 108 Pac. 593 (1910). It can be substantial [citing authorities] but not out of proportion to actual damages. *Halverson v. Seattle Electric Co.*, 35 Wash. 600, 77 Pac. 1058 (1904). The amount of the damage is within the discretion of the jury, under proper instructions. The jury is given considerable latitude in making such determination as to it seems just. *Aronson v. Everett*, 136 Wash. 312, 239 Pac. 1011 (1925); *Ticknor v. Seattle-Renton Stage Line*, 139 Wash. 354, 247 Pac. 1 (1926). The subject matter being difficult of proof, it cannot be fixed with mathematical certainty by the proof. Once the determination is made, an appellate court will give great weight to, and is reluctant to interfere with, the jury's verdict. *Kellerher v. Porter*, 29 Wn. (2d) 650, 189 P. (2d) 223 (1948).

"On the other hand, the balancing factor is the conscience of the appellate court, when there is an affirmative showing that passion and prejudice played no part in the jury's determination. Is the amount flagrantly

outrageous and extravagant? Is it unjustified in the light of the evidence? Does it disclose circumstances foreign to proper jury deliberations? If it is and does, then it can be said to shock the sense of justice and sound judgment, and the verdict of the jury is excessive." *Kramer v. Portland-Seattle Auto Freight,* 43 Wn. (2d) 386, 395, 261 P. (2d) 692. (Italics ours.)

Having reviewed the record and applied the rules heretofore discussed, we are not persuaded the amount stated by the trial judge is out of proportion to the disabilities of the plaintiff induced by the accident.

Judgment affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and HAMILTON, JJ., concur.

\*Reported in 424 P.2d 648.