JAMES STEELE et al., *Appellants*, v. CLARA THORNE,
*Respondent*.*

*Miracle, Treadwell & Pruzan*, by *J. Porter Kelley*, for
appellants.

*Martin, Shorts & Bever*, by *Edward C. Burch*, for re-
spondent.

HALE, J.—Plaintiff Maxine Steele's mother owned, opera-
ted and lived in the Brentwood Hotel in downtown Seattle.
While visiting her mother there, plaintiff slipped and fell
walking down a hall stairway, sustaining serious injuries.
She brought this action against her mother for negligence
in failing to maintain the stairway properly. The main
question, as we see it, is the nature of duty owed by the
defendant mother to her plaintiff daughter in maintaining
the stairway.

Defendant, Clara Thorne, a widow, lived in the hotel in
an apartment consisting of a living room, kitchen, bedroom

*Reported in 435 P.2d 544.

and bath. Plaintiff Maxine Steele lived in a residential district of Seattle with her husband and three children and had visited her mother in the hotel many times during several years. On December 30, 1963, as plaintiff described it:

> I took my two children and went down to visit with my mother, and we were in her apartment, and I was going downtown to get some shoes, so I asked mother if she would watch the children for me and she said yes . . . .

Mrs. Steele went downtown and bought a pair of shoes; she wore the new shoes walking back to the hotel from the store, a distance of five blocks. After arriving at her mother's apartment in the hotel, she decided to return to her home by taxi and walked up a carpeted stairway to the pay telephone on the floor above to call a taxi. After completing the telephone call and while walking down the same stairway, she slipped and fell on about the fifth step down the first flight, sustaining serious injuries.

The stairway had a railing and carpeted treads, with the carpeting secured by an aluminum strip at the outer edge of each tread. Plaintiff described her fall in this way:

> I used the phone and I just turned around and took ahold of the railing coming down, and I got down, oh, maybe two-thirds of the way, or five or six steps from the bottom, and my foot just went completely out from under me. . . . Well, my foot went out and I let go of the railing, and I twisted and put my arm behind me to try to back my fall so I wouldn't fall down the stairs, and then I just sat down real hard.

As to the cause of the slip, she could say only, "Either the stripping was slippery, or it was dirty, or there was something slick on the stair; I don't know for sure. . . . Well, they were dirty."

She knew of a light switch at the bottom of the stairs, but did not turn it on on the way up to the telephone because, she said, "I've been going down there for eight years, and I just knew those steps like the back of my hand."

The stairway on which plaintiff fell was one regularly maintained for and used by occupants of the hotel. There was no sign or other device outside the hotel to indicate that a public telephone was located inside the hotel and the defendant derived no income whatever from the pay telephone. The telephone was used only occasionally by the public.

Plaintiff brought this action against her mother, the owner and operator of the Brentwood Hotel, alleging negligence in maintaining the stairway in an unsafe condition. In the course of trial by jury, the court, on completion of plaintiff's case as to facts affecting liability, ordered the case dismissed. Plaintiff now appeals the judgment of dismissal.

Plaintiff's rights and defendant's duties, according to the Restatement, Torts, with which we are in agreement in this instance, depend largely on whether at the time of the accident plaintiff was an invitee or licensee. Restatement (Second) Torts § 332 (1965), defines invitee as:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

■ Since there was no evidence whatever that plaintiff went into the hotel either on a purpose for which the hotel was kept open to the public or to carry on directly or indirectly any commercial transactions with her mother, plaintiff was neither a public invitee nor a business visitor as those terms are known to the Restatement. She was, however, a person privileged to enter and remain in this hotel largely by virtue of her mother's consent coupled with what the law would deem to be an implied but subsisting social invitation from mother to daughter. Thus, at the time of the accident, the daughter was a licensee, both

as a member of the family of the possessor of land and as a social guest. Restatement (Second) Torts § 330 (1965), says:

*Persons included.* Included under licensees, among others, are three types of persons:

1. One whose presence upon the land is solely for his own purposes, in which the possessor has no interest, and to whom the privilege of entering is extended as a mere personal favor to the individual, whether by express or tacit consent or as a matter of general or local custom.

2. The members of the possessor's household, except boarders or paying guests and servants, who, as stated in § 332, Comments *i* and *j*, are invitees.

3. Social guests.

■ The Restatement thus puts members of one's household and social guests in the same class insofar as the possessor of land's duties apply to either, basing this classification on the idea that

[T]he guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family. Restatement (Second) Torts § 330 (1965).

This court, being in agreement with the foregoing classifications from the Restatement, applied it in *McKinnon v. Washington Fed. Sav. & Loan Ass'n,* 68 Wn.2d 644, 414 P.2d 773 (1966), holding that, where a savings and loan association allowed a girl scout group to conduct a meeting in the association's building, an adult leader of the group was an invitee and not a mere licensee, and that she came specifically within that group of invitees described as a public invitee. That ruling, however, although it represented a departure from and an extension of the purely business invitee concept—hitherto said to rest on some kind of business or economic benefit occurring directly or indirectly to the possessor of the land from the presence of the invitee —did not imply that the classification be extended to include social guests.

*McKinnon* was decided in light of *Porter v. Ferguson*, 53 Wn.2d 693, 694, 336 P.2d 133 (1959), where plaintiff, while visiting her daughter's home and assisting her daughter in cooking dinner, and could conceivably be conferring some kind of economic benefit upon her daughter, was, nevertheless, deemed to be a licensee rather than invitee. Referring to the daughter and her husband as occupiers of the premises, we said that they owed to the mother only the "duty of not willfully or wantonly injuring" her. Although the rule with respect to social guests and members of one's family is couched in rather stringent terms, reducing the occupier's duty to a point of not wantonly or willfully injuring one's guests, the rule is probably not so severe as the words imply. The whole idea of limiting the householder's duty to his social guests and members of his family is as the Restatement suggests, *i.e.*, that the guest ordinarily takes the premises as he finds them and as the host occupies them, and the host ought not be required to take extraordinary precautions which he would not and does not take for himself and members of his family. *Accord, Lucas v. Barner*, 56 Wn.2d 136, 351 P.2d 492 (1960). Thus, although the Restatement (Second) Torts § 330 *h* 2, 3 (1965), says that, among licensees shall be included "The members of the possessor's [of land] household" and "Social guests," this court has in turn in *Lucas* and *Porter* included the mother of a married daughter among the members of the daughter's household even though the mother ordinarily resided elsewhere and was merely visiting the daughter's home.

Plaintiff here, in taking her children to her mother's home and leaving them there while she went shopping, must, therefore, be deemed both a social guest and a member of the mother's household and, therefore, as to events occurring on the premises, a licensee. Her trip up the stairway to the telephone for the purpose of calling a taxi to take her and the children home and her return down the stairway from the telephone to her mother's quarters in the hotel, was in no sense for the mother's economic or com-

mercial benefit. It consisted of movement within the building for the personal benefit of the plaintiff, much as though she were walking from one room to another in quest of a telephone within the apartment proper. As a social guest, household member and licensee, she took her mother's premises as her mother kept them, the mother being under a duty to her daughter to refrain from willfully injuring her and to protect her from such dangers as would, if not warned against, constitute a wanton disregard for the daughter's safety.

Assuming that the evidence describing the stairway is regarded in a light most favorable to the daughter, *i.e.,* carpeted, with aluminum strips, a handrail, dirty and perhaps having a sticky substance thereon, the record shows that the daughter, from many prior uses, knew it well, and its condition could not be said to show either a willful purpose to injure or such a lack of concern for the plaintiff's safety as to constitute a wanton disregard thereof. Plaintiff's injuries thus arose from no breach of duty owed by defendant mother to plaintiff daughter.

Affirmed.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., and LANGENBACH, J. Pro Tem., concur.