[No. 422-3.    Division Three.    March 31, 1972.]

ONETHA HAMPTON, *Appellant,* v. LYNCH MOTOR COMPANY, *Respondent.*

*J. P. Tonkoff* (of *Tonkoff, Dauber & Shaw*), for appellant.

*Norman R. Nashem, Jr.* (of *Nashem, Prediletto & Brooks*), for respondent.

GREEN, J.—Plaintiff, Onetha Hampton, brought an action against the defendant, Lynch Motor Company, for personal injuries sustained when she fell into a grease trap or sump located on defendant's premises. From a jury verdict in favor of defendant, plaintiff appeals.

The issues raised on appeal revolve around certain instructions given and refused, relating to licensees, wanton misconduct, business invitees and contributory negligence.

Plaintiff's husband, Robert Hampton, was an employee of the defendant. On January 23, 1970, plaintiff had taken her husband to work in the morning and planned to pick him up in the evening. Mr. Hampton telephoned plaintiff during the day and told her the defendant had just taken in a 1964 Buick car on a trade and wanted her to see it. The car that the Hamptons were driving was purchased 4 years previously from defendant and they were in the market to buy another car.

Defendant's business premises are severed by an alley. On one side of the alley is a garage, a new car showroom, a new car storage area and an access area. Immediately behind the garage and adjacent to the alley is a grease sump. One-half of the top is covered with a metal grating so that water, oil and dirt can drain through it. The other half, which is next to the alley, is covered by a solid sheet of iron weighing approximately 75 pounds. These coverings are flush with the concrete ground level. Cars and trucks are parked on a hoist or over the pit during the steam cleaning of engines and the grease and dirt from the engines drain into the sump. On the day in question, defendant's tow truck was backed and parked behind the garage in front of the sump. Further away from the alley and to the rear of the building are a pressure tank, hoses and gas pump. On the other side of the alley is defendant's used car lot.

About 5 p.m. plaintiff drove onto defendant's premises by proceeding through the alley, around the tow truck, and parked with the rear of her vehicle near the gas pump. The gas tank in the vehicle was filled. Defendant permitted employees to buy gas at wholesale.

Mr. Hampton got off work at 5 p.m. He met plaintiff at the car and together they walked around the front of the tow truck, across the alley, and into the used car lot, where they looked at the 1964 Buick and a station wagon. Two of defendant's salesmen showed the automobiles to plaintiff and her husband. When the examination was completed, plaintiff and her husband returned across the alley to their

car. Instead of proceeding around the front of the tow truck, plaintiff proceeded to walk between the rear of the tow truck and the building. As she stepped on the iron covering over the sump, it gave way. She fell into the sump, incurring physical injury.

First, plaintiff assigns error to the giving of instructions allowing the jury to classify her as a licensee. Plaintiff takes the position that she was a business invitee, not a licensee. This position is based upon the fact that plaintiff purchased gasoline from defendant while on the premises and that two of defendant's salesmen showed plaintiff and her husband two cars which they were interested in purchasing. Defendant argues that plaintiff's visit to the used car lot was of no potential economic benefit to defendant since it would not have sold a car to the Hamptons, in any event, because of their financial condition. Further, defendant argues the gasoline was sold at wholesale and therefore it derived no economic benefit from the sale. We disagree.

■ In *McKinnon v. Washington Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 649, 414 P.2d 773 (1966), a business invitee was defined as:

[O]ne who is either expressly or impliedly invited onto the premises of another for some purpose connected with the business in which the owner or occupant is then engaged. To qualify as an invitee or business visitor under this definition, it must be shown that the business or purpose for which the visitor comes upon the premises is of actual or potential benefit to the owner or occupier thereof.

Restatement (Second) of Torts § 332 (1965), quoted with approval in *McKinnon*, states:

(1) An invitee is . . . a business visitor.

. . .

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Plaintiff's sole purpose in walking to the used car lot was to look at a used car that was for sale, with a view to its

purchase. The car was shown by two of defendant's salesmen. Plaintiff's act was of potential benefit to defendant within the rule of *McKinnon* or the Restatement of Torts, *supra*, and fixed her status as an invitee. In these circumstances, plaintiff was not a licensee and instructions defining a licensee and the duty of care owed to a licensee were erroneously given.

Defendant's belated contention that it was reluctant to make sales to employees because they always chose the best cars, wanted to purchase them at a discount and be provided financing does not persuade us from our holding. Defendant's president testified there was no particular policy in this regard. Further, there is nothing in the record to indicate defendant ever informed Hampton that he would not sell him a car. The Hamptons' present automobile, although purchased from defendant, was financed elsewhere.

Defendant contends that, even if plaintiff became an invitee when she was in the used car lot, the area of invitation was limited to the used car lot and did not extend to the work area where the sump was located. We are unable to accept this contention. There were no signs restricting the work area to employees only; nor was the work area closed off. The record shows that on occasion salesmen would take customers from their new car showroom or new car storage area, across the alley and into the used car lot. There was a door leading out of the back of the new car showroom. Defendant's sales manager testified they always took customers around the work area, but he did not know the route other unescorted customers took to the used car lot. There is no evidence of a designated normal route to the used car lot that defendant made known to unescorted customers. The route chosen by plaintiff was the shortest route to her car. In these circumstances, we believe the area in which plaintiff was injured was within the area of invitation.

Upon retrial, the court should instruct the jury that plaintiff was an invitee as a matter of law and instruct upon the duties owed by the defendant to an invitee. WPI 120.06.01.

■ Second, plaintiff contends the trial court erred in giving an instruction on contributory negligence. It is plaintiff's position there was no evidence introduced by the defendant to establish any negligence on the part of the plaintiff. We disagree. The evidence shows that plaintiff crossed the alley and rather than going around the front of the tow truck, proceeded to go between the rear of the truck and the building. Plaintiff testified that as she approached this area she was looking straight ahead. In this area, instead of walking on solid ground it was necessary to traverse the metal covering over the sump. Whether plaintiff was negligent in failing to maintain a proper lookout or in proceeding into this type of area rather than around the front of the tow truck created an issue for the jury. Where reasonable minds could differ in the interpretation of the facts, contributory negligence is for the jury. *Carrico v. Country Store of Salem, Inc.*, 4 Wn. App. 567, 570, 484 P.2d 412 (1971).

■ Third, plaintiff assigns error to the giving of the following instruction:

### INSTRUCTION No. 14

In order to support a finding of negligence, a temporary unsafe condition of the premises which was not created by defendant or defendant's employees, must either have been brought to the actual attention of defendant or defendant's employees or it must have existed for a sufficient length of time and under such circumstances that defendant or defendant's employees should have discovered it in the exercise of ordinary care.

This instruction, by its terms, is applicable to a temporary unsafe condition not created by the defendant or his employees. We agree with plaintiff's position that there was no evidence to support the giving of this instruction. Consequently, the instruction should not have been given.

Fourth, plaintiff takes exception to the italicized portion of the following instruction:

### INSTRUCTION No. 16

Ordinary care requires that a person keep a lookout

ahead while walking. However, where there is no reason to anticipate a hazard, reasonable care does not require one who is walking in a place provided for that purpose to watch his footing every step of the way. On the other hand, *if there is a hazard and it is known and apparent, the person should watch his footing to the extent necessary, in the exercise of reasonable care, to avoid the hazard.*

(Italics ours.) It is plaintiff's position the record is void of any evidence that plaintiff knew of a hazard or that the hazard was apparent to plaintiff and therefore the instruction was erroneous. We agree. There is no evidence the plaintiff knew the covering was not properly in place, nor was it apparent to her. It is obvious from the record that she was totally unaware of the condition of the iron cover until she fell into the sump. This holding does not prevent the defendant, under the general instruction on contributory negligence, from arguing that plaintiff should have discovered the condition of the cover in the exercise of ordinary care.

In the circumstances here presented, we find no error in the court's refusal to give plaintiff's proposed instruction No. 8 to the effect that plaintiff was not required to keep her eyes immediately in front of her at all times. At the time of plaintiff's injury, she was proceeding into an area where the surface condition was different from the surrounding ground area. In that circumstance, the requested instruction should not be given. *Quinn v. McPherson,* 73 Wn.2d 194, 199, 437 P.2d 393 (1968).

Fifth, plaintiff assigns error to the court's failure to give her proposed instruction that a momentary distraction does not as a matter of law deprive her of the right to recover for her injuries. There is no evidence in the record that plaintiff was temporarily distracted; hence, the refusal to give this instruction was not error.

■ Since no authority has been cited in support of the remaining assignments of error, they will not be consid-

ered. *Brown v. Quick Mix Co.,* 75 Wn.2d 833, 454 P.2d 205 (1969).

Judgment reversed.

MUNSON, C.J., and EVANS, J., concur.

Petition for rehearing denied May 30, 1972.

Review denied by Supreme Court July 21, 1972.