[No. 52168-9. En Banc. September 11, 1986.]

LISA YOUNCE, *Appellant,* v. TAMERA FERGUSON, *Defendant,* DEAN STRUNK, ET AL, *Respondents.*

*Dennis W. Lane* and *Wilson, Nichols & Marshall,* for appellant.

*John R. Potter* and *Blair, Schaefer, Hutchison, Wynne, Potter & Horton,* for respondents.

*Robert H. Whaley* and *Bryan P. Harnetiaux* on behalf of Washington Trial Lawyers Association, amici curiae for appellant.

*Bertha B. Fitzer* on behalf of Washington Association of Defense Counsel, amicus curiae for respondents.

GOODLOE, J.—In this case, we determine whether the common law classifications of entrants as invitees, licensees, or trespassers should continue to be determinative of the standard of care owed by an owner or occupier of land and whether the status of the entrant in this case was correctly determined. We answer both questions affirmatively and affirm the trial court.

Appellant Lisa Younce appeals the dismissal of respondents Charles, Thelma, and Dean Strunk from the suit. Lisa was injured when a car driven by Tamera Ferguson ran into her on a parcel of Strunk property, where a high school graduation "kegger" party was being held.

Dean Strunk, the son of Charles and Thelma Strunk, was a member of the 1977 Evergreen High School graduating class. Class members planned a graduation party to follow commencement exercises on June 7, 1977. Tickets to the party were sold for $4 to purchase beer, food, and music. Dean made arrangements to and did buy 15 kegs of beer from a local tavern for the party with ticket proceeds. The

party was originally scheduled to be held on another class member's property, but during the commencement exercises it was generally agreed that the party would be moved to the Strunk property on 109th Avenue.

The 109th Avenue property was the largest of eight parcels of land that Charles and Thelma Strunk had under lease for farming purposes. The property was located 6 miles or 8 to 9 minutes driving time from the Strunk residence. Dean and his younger brother, Brad, took care of family duties at the property.

Following commencement exercises, Dean went home, changed clothes, and transported the kegs to the 109th Avenue property. Charles and Thelma returned home from the commencement exercises around 10:20 p.m. to 10:30 p.m. From about 11 p.m. to 11:10 p.m., four or five carloads of people arrived at the Strunk residence asking the location of the party. The Strunks also received a phone call from someone looking for the site. More than one inquirer advised the Strunks that the party was on Strunk property. Charles Strunk drove to four parcels within 1 mile of the family residence to see if there was a party, testifying he would have run the kids off the property if he had found them. He did not, however, check the 109th Avenue property.

When Dean arrived at the 109th Avenue property around 11 p.m. with the kegs, 100 to 400 minors were present, including graduating seniors, schoolmates, students from other schools, and other minors not attending school. Brad was collecting tickets, directing cars to parking areas, and advising cars' occupants of the kegs' location.

Tamera Ferguson, a minor, paid for attendance when she arrived. Lisa Younce, a minor, arrived around 11:30 p.m. with Judy Bock, who had previously bought two tickets for their admission. Lisa and Judy had had one mixed drink before arriving. They mixed another after arriving but Lisa did not drink it.

When the accident occurred, at approximately 12:15 a.m., drinking had been going on at the site for at least an hour,

but the party attendees were well behaved. There had been no excessive drinking except for Dean and Tamera, who both admitted they were intoxicated from alcohol consumed at the party site. No automobile had been driven through the area where party attendees were standing. Lisa was standing in a dimly lit grassy and gravel area near the main barn and approximately 150 feet away from the kegs. Lisa was hit from behind by a Volkswagen driven by Tamera. The car hit her in the right knee and knocked her to the ground. Lisa was not under the influence of or affected by alcohol at the time she was hit. Tamera left or was taken from the scene. Lisa was taken to the hospital. Charles and Thelma Strunk were notified of the accident. They went to the 109th Avenue property with cooking utensils and prepared hamburgers from 1:30 a.m. to 5:30 a.m. when the kegs were emptied and the last attendees left.

Dean and Lisa both knew that when minors drink they become intoxicated, and when they become intoxicated they will drive. Charles and Thelma Strunk knew that minors drink at parties.

Lisa sued Tamera. The trial court found that Tamera had negligently injured Lisa and entered judgment for $69,543.31. Tamera did not appear at trial and has not appealed.

Lisa also sued the Strunks. Her first theory alleged negligence per se based on a violation of RCW 26.28.080 (selling or furnishing intoxicating liquor to a minor). Based on the case of *Hulse v. Driver,* 11 Wn. App. 509, 524 P.2d 255, *review denied,* 84 Wn.2d 1011 (1974), the trial court dismissed this portion of the plaintiff's complaint with prejudice. This issue has not been appealed, and no argument has been presented. Lisa's second theory which is the basis of the entire appeal relates to the common law classifications between invitee, licensee, and trespasser and the duty of care owed by the owner or occupier of land.

The trial court found that liability on the part of the Strunks depended upon Lisa's status on the property. The

court found Lisa was a social guest, and therefore only a licensee. Applying the duty of care applicable to licensees and articulated in Restatement (Second) of Torts § 332 (1965), the trial court found the duty had not been breached. The Strunks were dismissed with prejudice. The court explained in its memorandum opinion, however, that if Lisa had been an invitee and the duty of care therefore had been one of reasonable care under all the circumstances, the court would have concluded that the Strunks had breached their duty to Lisa. The court also noted, however, that this was a case where Lisa could appreciate the dangers or conditions of the premises. Lisa appealed. The case is before this court on an administrative transfer from the Court of Appeals, Division Two.

Two issues must be addressed. First, we must decide whether in a claim for injury against an owner or occupier of land, the standard of care owed should continue to turn upon the common law distinctions between invitee, licensee, and trespasser, or whether such distinctions should be replaced by a negligence standard of reasonable care under all the circumstances. Because we retain the common law classifications, we must also decide whether Lisa Younce was properly characterized as a licensee or whether she should have been characterized as an invitee.

Lisa argues that the common law distinctions of invitee, licensee, and trespasser should no longer determine the applicable standard of care owed by an owner or occupier of land in Washington. She urges they be abandoned and replaced by a standard of reasonable care under all the circumstances. *See* 16 Gonz. L. Rev. 479 (1981). Washington relies upon and has adopted many of the definitions and corresponding duties outlined in Restatement (Second) of Torts (1965). *Egede–Nissen v. Crystal Mt., Inc.,* 93 Wn.2d 127, 131–32, 606 P.2d 1214 (1980).

In *Egede–Nissen* we acknowledged past questioning of the common law classification scheme, *see Ward v. Thompson,* 57 Wn.2d 655, 660, 359 P.2d 143 (1961) ("time-worn distinctions"); *Mills v. Orcas Power & Light Co.,* 56

Wn.2d 807, 820, 355 P.2d 781 (1960) ("ancient categories"), but decided that we were not ready then to totally abandon the traditional categories and adopt a unified standard. *Egede–Nissen,* at 131. We still are not ready and reaffirm use of common law classifications to determine the duty of care owed by an owner or occupier of land.

A recent annotation, *Modern Status of Rules Conditioning Landowners' Liability Upon Status of Injured Party as Invitee, Licensee, or Trespasser,* 22 A.L.R.4th 294 (1983), outlines the current positions of the different jurisdictions on this issue. Retention of the common law classifications continues to be the majority position.

Nine jurisdictions have abolished use of the common law classifications of invitees, licensees, and trespassers as determinative of the landowner's or land occupier's duty of care. *See* Annot., at 301–07; *Rowland v. Christian,* 69 Cal. 2d 108, 443 P.2d 561, 70 Cal. Rptr. 97, 32 A.L.R.3d 496 (1968); *Pickard v. City & Cy. of Honolulu,* 51 Hawaii 134, 452 P.2d 445 (1969); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971); *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97 (D.C. Cir. 1972); *Mariorenzi v. Joseph Diponte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976); *Cates v. Beauregard Elec. Coop., Inc.,* 328 So. 2d 367 (La. 1976); *Webb v. Sitka,* 561 P.2d 731 (Alaska 1977); *Hudson v. Gaitan,* 675 S.W.2d 699 (Tenn. 1984).

The typical analysis in these cases includes noting that England, where the distinctions originated, has abolished them by statute. Occupiers' Liability Act, 1957, 5 & 6 Eliz. 2, ch. 31. The cases also note that the United States Supreme Court refused to adopt the rules relating to the liability of a possessor of land for the law of admiralty. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630–31, 3 L. Ed. 2d 550, 79 S. Ct. 406 (1959).

The cases rejecting the classifications list the subtleties and subclassifications created in their respective jurisdic-

tions. The opinions explain that it is difficult to justify a system with so many exceptions and that while the distinctions were justified in feudal times, they are not justified in modern society. As explained in *Rowland,* at page 118, the first case to reject the classifications:

> A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty.

*Rowland* then announced the standard for determining the liability of the possessor of land would be "whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." *Rowland,* at 119. The principle is generally referred to as the reasonable care under all of the circumstances standard.

Six jurisdictions have abolished the distinction between licensee and invitee. *See* Annot., at 307–10; *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43 (1973); *Wood v. Camp,* 284 So. 2d 691 (Fla. 1973) (extending reasonable care to social guests or invited licensees but retaining distinction for uninvited licensees and trespassers); *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975); *O'Leary v. Coenen,* 251 N.W.2d 746 (N.D. 1977); *Poulin v. Colby College,* 402 A.2d 846 (Me. 1979). The rationales for abandoning the distinction between invitee and licensee are

the same as the rationales given by the cases abolishing the distinction between all three classifications. The reason given for not extending the standard of reasonable care to trespassers is that even in modern society it is significant that a trespasser does not come upon property under a color of right or that a trespasser was not involved in the case where the distinction between licensee and invitee was abolished.

However, the majority of jurisdictions have not rejected the classifications. *See* Annot., at 310–12. Some have directly confronted the issue of whether to abandon the distinctions and have declined to do so. *Whaley v. Lawing,* 352 So. 2d 1090 (Ala. 1977); *Bailey v. Pennington,* 406 A.2d 44 (Del. 1979); *Huyck v. Hecla Mining Co.,* 101 Idaho 299, 612 P.2d 142 (1980); *Hessler v. Cole,* 7 Ill. App. 3d 902, 289 N.E.2d 204 (1972); *Gerchberg v. Loney,* 223 Kan. 446, 576 P.2d 593 (1978); *Murphy v. Baltimore Gas & Elec. Co.,* 290 Md. 186, 428 A.2d 459 (1981) (choose not to abandon at least with respect to trespassers); *Astleford v. Milner Enters.,* 233 So. 2d 524 (Miss. 1970); *Steen v. Grenz,* 167 Mont. 279, 538 P.2d 16 (1975); *Buchanan v. Prickett & Son, Inc.,* 203 Neb. 684, 279 N.W.2d 855 (1979); *Moore v. Denune & Pipic, Inc.,* 26 Ohio St. 2d 125, 269 N.E.2d 599 (1971); *Sutherland v. Saint Francis Hosp., Inc.,* 595 P.2d 780 (Okla. 1979); *Buchholz v. Steitz,* 463 S.W.2d 451 (Tex. Civ. App. 1971); *Tjas v. Proctor,* 591 P.2d 438 (Utah 1979); *Yalowizer v. Husky Oil Co.,* 629 P.2d 465, 22 A.L.R.4th 285 (Wyo. 1981). Some without directly confronting the issue, or by deferring to a higher appellate court, continue to adhere to the common law classifications. *Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 639 P.2d 330 (1982); *Ramsey v. Mercer,* 142 Ga. App. 827, 237 S.E.2d 450 (1977); *Barbre v. Indianapolis Water Co.,* 400 N.E.2d 1142 (Ind. Ct. App. 1980); *Champlin v. Walker,* 249 N.W.2d 839 (Iowa 1977); *Davis v. Jackson,* 604 S.W.2d 610 (Mo. Ct. App. 1980); *Caroff v. Liberty Lumber Co.,* 146 N.J. Super. 353, 369 A.2d 983 (1977); *Andrews v. Taylor,* 34 N.C. App. 706, 239 S.E.2d 630 (1977); *Taylor v. Baker,* 279 Or. 139, 566 P.2d

884 (1977); *Crotty v. Reading Indus., Inc.,* 237 Pa. Super. 1, 345 A.2d 259 (1975); *Copeland v. Larson,* 46 Wis. 2d 337, 174 N.W.2d 745 (1970).

The reasons proffered for continuing the distinctions include that the distinctions have been applied and developed over the years, offering a degree of stability and predictability and that a unitary standard would not lessen the confusion. Furthermore, a slow, piecemeal development rather than a wholesale change has been advocated. Some courts fear a wholesale change will delegate social policy decisions to the jury with minimal guidance from the court. *See* Hawkins, *Premises Liability After Repudiation of the Status Categories: Allocation of Judge and Jury Functions,* 1981 Utah L. Rev. 15. Also, it is feared that the landowner could be subjected to unlimited liability.

We find these reasons to be compelling. As noted by the Kansas court in *Gerchberg,* at pages 450-51: "The traditional classifications were worked out and the exceptions were spelled out with much thought, sweat and even tears". We are not ready to abandon them for a standard with no contours. It has been argued that jury instructions can provide adequate guidance. In fact, amicus has suggested and other courts have found that the following factors should be considered by the jury: (1) the circumstances under which the entrant was on the property; (2) the foreseeability of the injury or damage given the type of condition involved; (3) the nature of the property and its uses; (4) the feasibility of either correcting the condition on the property or issuing appropriate warnings; and (5) such other factors as may be relevant in the particular case. These factors are similar to the concerns being addressed by the current Restatement rules and case law. We do not choose to erase our developed jurisprudence for a blank slate. Common law classifications continue to determine the duty owed by an owner or occupier of land in Washington.

Lisa argues alternatively that, if the common law classifications are retained, she was incorrectly characterized as a licensee at trial. Lisa argues that she should have been

characterized as an invitee under the facts of this case. Lisa's status on the property determines the standard of care owed her by the Strunks.

In *McKinnon v. Washington Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 650, 414 P.2d 773 (1966), this court adopted the Restatement (Second) of Torts § 332 (1965) definition of invitee. An invitee is owed a duty of ordinary care.

Section 332 defines an invitee as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

■■ A licensee is defined as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement § 330. A licensee includes a social guest, that is, a person who has been invited but does not meet the legal definition of invitee. In *Memel v. Reimer*, 85 Wn.2d 685, 689, 538 P.2d 517 (1975), this court replaced the willful and wanton misconduct standard of care toward licensees with a duty to exercise reasonable care toward licensees where there is a known dangerous condition on the property which the possessor can reasonably anticipate the licensee will not discover or will fail to realize the risks involved. *Memel* specifically adopted the standard of care for licensees outlined in Restatement § 342:

A possessor of land is subject to liability for physical harm caused to *licensees* by a condition on the land *if, but only if,*

(a) the possessor knows or has reason to know of the condition and should realize that it involves an *unreasonable risk of harm* to such licensees, *and* should expect that they will not discover or realize the danger, *and*

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, *and*

(c) *the licensees do not know or have reason to know of the condition and the risk involved.*

(Italics ours.) *Memel,* at 689, 691. The possessor fulfills his duty by making the condition safe or warning of its existence.

Lisa contends that she was a member of the public on the land for a purpose for which the land is held open and therefore is an invitee. We disagree. The facts of this case do not parallel the facts of other cases where the plaintiff was found to be a public invitee. In *McKinnon,* a federal savings and loan association posted a sign saying it had meeting rooms available for public use. The plaintiff in *McKinnon* was part of a Girl Scout group using the room for Scout meetings. In *Fosbre v. State,* 70 Wn.2d 578, 424 P.2d 901 (1967), the plaintiff was injured at a recreational area on a National Guard fort. The area had been improved and maintained for use by National Guard families of which plaintiff was a member. In these "invitee" cases, "the occupier, *by his arrangement of the premises or other conduct,* has led the entrant to believe that the premises were intended to be used by visitors, as members of the public, for the purpose which the entrant was pursuing, and *that reasonable care was taken to make the place safe for those who enter for that purpose."* (Italics ours.) *McKinnon,* at 649. *See* W. Prosser, *Torts* § 61, at 388–89 (4th ed. 1971); Restatement § 332, comment *d.*

This implied assurance helps to distinguish between invitees and social guests, who are considered licensees. As explained in comment *h*(3) to Restatement § 330:

The explanation usually given by the courts for the classification of social guests as licensees is that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the

possessor does not prepare or take precautions for his own safety, or that of the members of his family.

Under the facts of this case, it is hard to imagine how the Strunks could have prepared or could have been expected to prepare a dairy farm for a kegger.

We are not persuaded by Lisa's argument that payment of a $4 admission price made her an invitee. Analysis in cases where an admission was paid and the plaintiff was characterized as an invitee did not focus on the money as indicative of the plaintiff's status as an invitee. *Hooser v. Loyal Order of Moose, Inc.*, 69 Wn.2d 1, 416 P.2d 462, 15 A.L.R.3d 1008 (1966) ($1 for New Year's Eve party held at Moose Lodge); *Dickinson v. Tesia*, 2 Wn. App. 262, 467 P.2d 356 (1970) ($2 for picnic in recreational area).

The trial court correctly identified Lisa as a licensee. She was privileged to enter or remain on the land only by virtue of the owner's consent. We question whether Charles and Thelma did consent to her presence on the property, but recognize that Dean did consent. In any event, we find the duty owed licensees was not breached because no known dangerous condition existed of which Lisa was not aware or of which she did not realize the risks involved. Lisa had knowledge of the risks involved by staying on the property. We affirm the trial court.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., concur.