[No. 12425–4–II.   Division Two.   September 17, 1990.]

MICHAEL J. SWANSON, *Appellant,* v. JERRY L. McKAIN, ET AL, *Respondents.*

304

*Paul L. Stritmatter* and *Stritmatter, Kessler & McCauley,* for appellant.

*Alan J. Peizer* and *Mackin, Sorensen, Peizer, Richards & Edwards, P.S.,* for respondents.

ALEXANDER, C.J.—Michael Swanson appeals a summary judgment order of the Pierce County Superior Court dismissing his personal injury action against Jerry and Mary Ellen McKain. We affirm.

Viewing the facts in a light most favorably to Swanson, it is apparent that on the morning of March 15, 1986, Michael Swanson suffered injuries after diving into shallow water off Camano Island. At that time Swanson and four other individuals were guests at a nearby beachfront home owned by Jerry and Mary Ellen McKain. They had all arrived at the home approximately 2 days before at the invitation of the McKains' daughter, Eileen. On the evening before the accident, the group had gathered at the McKain cabin and discussed getting up at 4 o'clock to watch Halley's comet which was to appear in the sky the following morning. Eileen McKain proposed that they should all go swimming at that time.

At approximately 4 a.m. the following morning, Eileen McKain, Michael Swanson and two other persons left the McKain house and went down to the beach. Swanson waded out into the water approximately 50 to 75 yards, at which point the water was knee deep. Swanson then dove into the water and immediately sustained an injury to his head which rendered him a quadriplegic.

Swanson filed a complaint against Jerry and Mary Ellen McKain and Eileen McKain seeking damages for the injuries he sustained. He alleged in his complaint that they breached a duty to warn him of the dangers and characteristics of the tidal waters into which he dove. Specifically, Swanson contended that he struck his head on hidden, floating, transient debris in the water (*i.e.,* "a log or stump"), the existence of which, he alleged, Eileen McKain knew or should have known about and of which she failed to warn.

The McKains moved for summary judgment, alleging that: (1) the injury did not occur on land owned by the defendants and, thus, they owed no duty to the plaintiff; (2) assuming ownership of the property, the defendants did not owe plaintiff a duty to warn of natural conditions and, thus, they did not breach any duty owed to the plaintiff; (3) the defendants are immune from liability under Washington's recreational land use statute, RCW 4.24.210; and (4)

even assuming a duty to warn of the danger of debris in the water, there is no evidence that plaintiff struck his head on such debris as opposed to the shallow bottom and, thus, such a breach could not be shown to be the proximate cause of plaintiff's injuries.

The trial court granted the McKains' motion and dismissed Swanson's lawsuit, concluding that (1) the recreational land use statute, RCW 4.24.210, barred Swanson's action and (2) Swanson had exceeded the scope of Eileen McKain's invitation to go "swimming" by diving into the water.

In reviewing a trial court's decision granting summary judgment, an appellate court engages in the same inquiry as does the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982). Summary judgment should be granted only where the pleadings, affidavits, depositions, and admissions on file, and the reasonable inferences to be drawn therefrom, viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Jarr v. Seeco Constr. Co.,* 35 Wn. App. 324, 328, 666 P.2d 392 (1983).

Although the trial court relied on the recreational land use statute and what it believed was the limited scope of the McKains' invitation in granting summary judgment, we find it unnecessary to address those issues because we conclude that there is no foundation in law or equity for a duty to warn a social guest of natural conditions.[1] Consequently, the evidence considered by the court in the motion for

---

[1]We similarly find it unnecessary to address the McKains' alternative contentions that the injury did not occur on land owned or controlled by them for purposes of the imposition of a duty of care (*see Mesa v. Spokane World Exposition,* 18 Wn. App. 609, 613, 570 P.2d 157 (1977), *review denied,* 90 Wn.2d 1001 (1978)); or, that the evidence is insufficient to establish that the breach of any duty was the proximate cause of Swanson's injuries as opposed to him merely having struck the bottom.

summary judgment does not support a cause of action and dismissal was, therefore, appropriate.[2]

A cause of action founded on negligence requires that a plaintiff establish:

> (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury.

*Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984). The threshold determination of whether a defendant owes a duty to the complaining party is a question of law. *Pedroza,* 101 Wn.2d at 228. In deciding questions of duty a court must evaluate public policy considerations. *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 933, 653 P.2d 280 (1982).

In determining whether the McKains had a duty to warn Swanson of natural conditions pertaining to Puget Sound, the common law classification of persons entering upon real property (*i.e.,* invitee, licensee or trespasser), are determinative of the duty of care owed by the owner or occupier of the property. *Younce v. Ferguson,* 106 Wn.2d 658, 666–67, 724 P.2d 991 (1986). Where, as here, the facts surrounding the complaining party's entry upon the property in question are not contested, the determination of the legal status of that entrant as either an invitee, licensee or trespasser is a question of law.[3]

Swanson contends that he was an "invitee" of the McKains. The classification of "invitee" has been defined as including both public invitees and business visitors. *Younce,* 106 Wn.2d at 667 (quoting Restatement (Second) of Torts § 332 (1965)). Swanson asserts that he was a

---

[2]*See Sprague v. Sumitomo Forestry Co.,* 104 Wn.2d 751, 758, 709 P.2d 1200 (1985) (a judgment of the trial court will not be reversed when it can be sustained on any legal theory, although different from that indicated in the decision of the trial judge).

[3]The common law status of an entrant, although based upon the pertinent facts, rests upon the legal effect of actions taken by the parties, which is a question of law. *See, e.g., Barnett v. Buchan Baking Co.,* 45 Wn. App. 152, 156, 724 P.2d 1077 (1986), *aff'd,* 108 Wn.2d 405, 738 P.2d 1056 (1987).

"business visitor" because his presence economically benefited the McKains due to the fact that he: (1) brought some firewood with him at the request of Eileen McKain, (2) repaired a dripping faucet in the McKains' cabin while there, (3) contributed funds toward the purchase of groceries, and (4) contributed to Eileen McKain's contacts in the legal community as a law student in that Swanson was an attorney.

The term "business visitor" has been defined as:

> . . . a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

*Younce,* 106 Wn.2d at 667 (quoting Restatement (Second) of Torts § 332(3) (1965)). Swanson relies upon *McKinnon v. Washington Fed. Sav. & Loan Ass'n,* 68 Wn.2d 644, 648–49, 414 P.2d 773 (1966), as support for his assertion that the "economic benefit" resulting from the above conduct is sufficient to qualify him as a business visitor.

In *McKinnon,* the court adopted an "economic benefit" test in determining whether an entrant to one's land is an invitee. *McKinnon,* 68 Wn.2d at 649. In applying the test, however, the court stated that in order to qualify as a business visitor, an individual must enter the premises ". . . for some purpose connected with the business in which the owner or occupant is then engaged. . . ." *McKinnon,* 68 Wn.2d at 649.

Accordingly, the court in *McKinnon* did not hold that mere economic benefit is sufficient to establish status as an invitee. On the contrary, the court in *Younce v. Ferguson, supra,* expressly rejected an argument that payment of a $4 admission price qualified an entrant upon real property as an invitee. *Younce,* 106 Wn.2d at 669. In so holding, the court recognized that prior Washington case law has not focused on monetary contribution as indicative of a plaintiff's status as an invitee. *Younce,* 106 Wn.2d at 669.

We conclude from these authorities that the significant factor which establishes an entrant upon real property as a business visitor, for purposes of qualifying that person as

an invitee, is whether the entrant was invited to enter or remain on the property for a purpose directly or indirectly *connected with business dealings of the owner or occupant.* Of the four factors cited by Swanson as support for his argument that he was an invitee, only his allegation that his presence indirectly benefited Eileen McKain's contacts in the legal community is relevant to any "business purpose" of the McKains. Even viewing that fact in the light most favorable to Swanson, as we must, we conclude as a matter of law that the conduct was merely incidental to his status as a guest of the McKains and was insufficient to qualify him as an invitee.

We conclude, therefore, that Swanson was merely a guest of the McKains and, therefore, a licensee. A licensee is defined as a person who is privileged to enter or remain on land only by virtue of the possessor's consent. *Younce,* 106 Wn.2d at 667 (quoting Restatement § 330). A licensee includes a "social guest," which is defined as a person who has been invited but does not meet the legal definition of invitee. *Younce,* 106 Wn.2d at 667.

We now address whether the duty owned to licensees includes a duty to warn of natural conditions associated with bodies of water. Washington has adopted the Restatement (Second) of Torts § 342 (1965) as the standard of care owed to licensees. *Memel v. Reimer,* 85 Wn.2d 685, 689, 538 P.2d 517 (1975). That section provides as follows:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

*See Memel,* 85 Wn.2d at 689. Under the Restatement standards, there exists a duty to exercise reasonable care

toward licensees where there is a known dangerous condition on the property which the possessor can reasonably anticipate the licensee will not discover or will fail to realize the risks involved. *Younce,* 106 Wn.2d at 667.[4]

The McKains assert that the duty owed to licensees does not encompass the duty to warn of natural conditions associated with bodies of water. In support of this contention, they cite *Ochampaugh v. Seattle,* 91 Wn.2d 514, 588 P.2d 1351 (1979). In *Ochampaugh,* the plaintiff brought a wrongful death action against the City of Seattle for the death of his two sons who drowned in a pond situated on the City's property, alleging that the pond constituted an attractive nuisance. *Ochampaugh,* 91 Wn.2d at 515. The Washington State Supreme Court affirmed the trial court's dismissal of the action on summary judgment, holding that natural bodies of water do not constitute dangers which come within the doctrine of "attractive nuisance" because their dangers are open and apparent. *Ochampaugh,* 91 Wn.2d at 526.

Swanson seeks to distinguish *Ochampaugh,* because it dealt solely with the doctrine of attractive nuisance. We disagree and find *Ochampaugh* to be authoritative. Although the court addressed the doctrine of attractive nuisance, the basis for its holding was its conclusion that

---

[4]In contrast, a possessor of land owes invitees an affirmative duty to discover dangerous conditions. *See, e.g., Egede–Nissen v. Crystal Mt., Inc.,* 93 Wn.2d 127, 132, 606 P.2d 1214 (1980) (citing Restatement (Second) of Torts § 343, comment *b* (1965)). As stated in comment *b* to section 343, a possessor of land owes an invitee:

> the additional duty to exercise reasonable affirmative care to see that the premises are made safe for the reception of the visitor, or at least to ascertain the condition of the land, and to give such warning that the visitor may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.

*See also Jarr,* 35 Wn. App. at 327. In addition, unlike the duty owed to a licensee, a possessor of land has a duty to protect an invitee against even known or obvious dangers where the possessor should anticipate harm to the invitee notwithstanding such knowledge or obviousness. *Jarr,* 35 Wn. App. at 326 (quoting Restatement (Second) of Torts § 343A (1965)).

the risks associated with natural bodies of water are obvious and apparent. The duty owed to licensees similarly excludes the duty to warn or protect a licensee from those conditions which the licensee knows or has reason to know. *See Younce,* 106 Wn.2d at 667. Accordingly, we find the holding of *Ochampaugh,* that risks associated with natural bodies of water are open and apparent, to be conclusive on the issue of whether or not a licensee should be deemed to know, or have reason to know, of such risks.

In the alternative, Swanson asserts that *Ochampaugh* is limited to the risk of drowning, not risks associated with floating debris. Contrary to Swanson's assertion, however, the plaintiff in *Ochampaugh* specifically alleged, in addition to the risk of drowning, that the pond was hazardous because of its soggy bottom, slippery debris, and its changing contours which he further alleged were concealed because of the murky nature of the water. *Ochampaugh,* 91 Wn.2d at 524. These features, the court concluded, were common features the characteristics of which are generally known. *Ochampaugh,* 91 Wn.2d at 524. Accordingly, we find the holding of *Ochampaugh* equally applicable to floating debris naturally occurring in bodies of water.

Swanson also cites a line of Hawaii cases wherein liability has been imposed upon public and private landowners for failure to warn of natural conditions associated with water. *See Tarshis v. Lahaina Inv. Corp.,* 480 F.2d 1019 (9th Cir. 1973); *Kaczmarczyk v. City & Cy. of Honolulu,* 65 Hawaii 612, 656 P.2d 89 (1982); *Asato v. Matsuda,* 55 Hawaii 334, 519 P.2d 1240 (1974). We find these cases to be distinguishable, however, on the grounds that the defendants in the above actions were all proprietors of bathing resorts of which the plaintiffs, in turn, were patrons.[5]

[5]Swanson also cites *Littleton v. State,* 66 Hawaii 55, 656 P.2d 1336 (1982). In *Littleton,* the plaintiff was truck by a floating telephone pole while on the beach of a public park maintained by the City of Honolulu. The State of Hawaii was found liable for its negligence in maintaining the telephone pole, thus, permitting it to enter the water. *Littleton,* 656 P.2d at 1342. The City of Honolulu, however, was also found liable based upon a Hawaii statute imposing upon municipalities a

The importance of this distinction is evident in the holding of the court in *Tarshis,* wherein the plaintiff, a guest of an oceanfront hotel, was injured when she was thrown on the beach by a huge wave. In reversing the trial court's dismissal of the case on summary judgment, the Ninth Circuit Court of Appeals, citing Annot., *Liability of Private Owner or Operator of Bathing Resort or Swimming Pool for Injury or Death of Patron,* 48 A.L.R.2d 104 (1956), concluded that the owners of the hotel owed the plaintiff the duty to warn her of dangerous conditions in the ocean along its beach frontage. *Tarshis,* 480 F.2d at 1020.

The rationale for the court's imposition of a duty to warn of natural conditions in *Tarshis* clearly stemmed from the plaintiff's status as an invitee of the hotel. This interpretation of the court's holding is evident in the authority cited by the court in imposing liability. Specifically, the court premised its holding upon the annotation found at 48 A.L.R.2d 104. *See Tarshis,* 480 F.2d at 1020.

The annotation specifically phrases the duty in terms of that which is owed to an "invitee." 48 A.L.R.2d at 111–12. According to the annotation, a proprietor of a bathing resort has a duty to provide facilities which are reasonably fit for the purpose for which they are to be used. *See* 48 A.L.R.2d at 118–19, § 6. Consequently, where one undertakes to offer the use of public waters for swimming for purposes of profit, the patron has the right to rely upon the performance of the legal duty of the one furnishing the facilities to keep the facilities in reasonably safe condition for the purpose for which they are held open. 48 A.L.R.2d at 118–19.

---

duty to clear all debris likely to become a public nuisance from the shores and beaches within the respective municipalities. *Littleton,* 656 P.2d at 1344. Because of the statutory basis of the duty imposed, we find the holding of *Littleton* to be inapplicable.

Similarly, both the plaintiffs in *Kaczmarczyk* and *Asato* were patrons of municipally operated parks and, consequently, public invitees. *Kaczmarczyk,* 656 P.2d at 91; *Asato,* 519 P.2d at 1240. In *Kaczmarczyk,* the plaintiff drowned after becoming caught in a current off a public beach maintained by the City of Honolulu. *Kaczmarczyk,* 656 P.2d at 91. In *Asato,* the plaintiff was injured when she was struck by a floating log while swimming at a public beach maintained by the State of Hawaii. *Asato,* 519 P.2d at 1240.

Both plaintiffs in the above actions premised liability upon the failure to warn of the particular hazard in question. Although the court in *Asato* affirmed the imposition of liability without opinion, the court in *Kaczmarczyk* specifically premised its holding upon *Tarshis,* and referred to the municipal defendant as a "proprietor" of a bathing resort. *Kaczmarczyk,* 656 P.2d at 93.[6]

The above case law is consistent with Washington law which similarly recognizes that the duty owed to invitees includes the duty to warn of hazards or dangers which are known or obvious to the invitee where the possessor should anticipate harm to the invitee despite such knowledge or obviousness. See footnote 3. This is so because invitees

---

[6]Swanson also cites *Mandel v. United States,* 719 F.2d 963 (8th Cir. 1983). In *Mandel,* the plaintiff, a public invitee at the Buffalo River National Park, was injured when he struck a submerged rock while diving into waters on the Buffalo River which had been recommended to him by a park ranger. *Mandel,* 719 F.2d at 965. Because of the Arkansas recreational use statute, the United States' liability as landowner was limited to "willful or malicious" conduct. *Mandel,* 719 F.2d at 967. Accordingly, liability was not premised upon negligence, but rather, upon willful and malicious misconduct in recommending the particular area of the river to the plaintiff for the purpose of swimming. *Mandel,* 719 F.2d at 967. Because Swanson has failed to allege that Eileen McKain acted willfully or maliciously in recommending that they go swimming, we find the holding of *Mandel* to be inapplicable. *Johnson v. Schafer,* 110 Wn.2d 546, 548–49, 756 P.2d 134 (1988).

enter upon an implied representation or assurance that the land has been prepared and made ready and safe for the use which they are invited to make of the property. *See* Restatement § 343, comment *b*; *Jarr,* 35 Wn. App. at 327; *Egede–Nissen,* 93 Wn.2d at 132. Accordingly, a duty to warn of natural conditions, even though such conditions are presumed obvious and apparent, is consistent with the duty owed invitees.

In contrast, no case has been cited by plaintiff where a possessor of land has been found liable to a "licensee" for failure to warn of a natural condition; nor do we find support for the imposition of such a duty. We believe this is so because natural conditions constitute "obvious and apparent" dangers as a matter of law, precluding liability on the part of a possessor toward a licensee. *See Ochampaugh v. Seattle, supra.*

Finally, we note that as a matter of public policy, our courts have held that the duty of reasonable care imposed upon a possessor of land toward a licensee does not include a duty to warn of natural conditions. *See Ochampaugh,* 91 Wn.2d at 527. In *Ochampaugh,* the court noted that a majority of other courts have consistently held that a landowner cannot reasonably be required to take affirmative steps to make every natural condition safe or to warn of their presence or to prevent access to it. *Ochampaugh,* 91 Wn.2d at 527. The court determined, as a matter of law, that the probability of injury from natural conditions is not great enough to warrant a conclusion that a duty to exercise reasonable care demands such affirmative acts. *Ochampaugh,* 91 Wn.2d at 527. To conclude otherwise would, in our judgment, impose an unreasonable burden upon landowners and effectively remove any distinction between the duty of care owed invitees and that owed licensees.

For the reasons stated above, we conclude, as a matter of law, that the McKains did not breach any duty they owed to Swanson by failing to warn him of the potential for

floating debris in the water. Consequently, the trial court did not err in granting summary judgment.

Affirmed.

REED and WORSWICK, JJ., concur.

Review denied at 116 Wn.2d 1008 (1991).