Cheryl DIXON, Individually; John Robert Elfers, Jr., Individually and Cheryl Dixon, Administratrix of the Estate of John Robert Elfers, III, Plaintiffs,

v.

CSX TRANSPORTATION, INC., Defendant.

Civil Action No. 95–80.

United States District Court, E.D. Kentucky.

Dec. 4, 1996.

David E. Davidson, Cobb & Oldfield, Covington, KY, for Plaintiffs.

James F. Brockman, Lindhorst & Dreidame, Cincinnati, OH, for Defendant.

## OPINION AND ORDER

BERTELSMAN, Chief Judge:

### FACTS

On June 5, 1994, John Robert Elfers ("Robby"), a 17 year old tenth grader, went swimming with several of his friends in Grassy Creek in DeMossville, Kentucky. Although it was Robby's first visit, the plaintiffs contend that the area attracted many swimmers because it offers seven ledges from which to jump into the water, including an active train bridge and concrete supports. The bridge and surrounding land is owned by defendant CSX Transportation. After numerous successful jumps, Robby jumped off a concrete platform approximately 41 feet to the water below and drowned.

Both parties acknowledge a problem with frequenters on and around the bridge. In 1989, CSX officials investigated a report by a train engineer that trespassers were playing "chicken" with the train. As a result of the incident, CSX requested that the local police and sheriff's departments increase patrol of the area. Indeed, one local police officer stated that the area was a "hot spot" where the police often patrolled and issued trespassing citations. Even in the face of increased police attention, however, graffiti had been painted on the concrete supports and the train bridge, and a rope was tied under the tracks from which people apparently swung into the water.

Defendant CSX had posted one "No Trespassing" sign on a crossbuck along the train tracks at one end of the bridge. The sign was approximately 125 feet from the location where Robby jumped into the water. According to the plaintiffs, the sign was not visible to those who approached the bridge from the opposite direction; they claim that

Robby could not see the sign on the day he died.

The parties agreed there was no hidden hazard in the water. No one knows why Robby drowned. He had made previous successful jumps on the day in question and so had several others.

Robby's parents request damages on behalf of their son and compensation for their own loss of affection and companionship.

The case is before the court on the Railroad's motion for summary judgment. Despite the sympathy the court feels for the decedent's family, it is constrained to hold that there was no duty owed to the decedent—whether he was a trespasser or a licensee—at the time of the tragic accident and grant the summary judgment.

### *ANALYSIS*

In its initial summary judgment filing, the Railroad argued that the decedent was a trespasser on its property. The court believed this to be a questionable proposition in light of the continued known use of the bridge for swimming and diving, which could well amount to an implied invitation.[1]

The court, therefore, ordered the matter re-briefed on the issue of what, if any, duty was owed if Robby was a licensee.

The court makes no ruling on whether the decedent was a trespasser or a licensee,[2] because the law of Kentucky is clear that there is no duty owed even to a licensee under the circumstances disclosed by the evidence.

█ The law of Kentucky is clear that a landowner owes no duty to licensees to warn them of a known or obvious condition. See discussion in *Perry v. Williamson*, 824 S.W.2d 869, 874 (Ky.1992). The Kentucky Supreme Court there forcefully emphasized

that "if the hazard is obvious, then the possessor cannot be held liable in the first place." *Id.* This is because "[i]f the hazard is obvious then it does not involve an unreasonable risk of harm to the licensee." *Id.* (internal quotation marks omitted).

As part of an extended discussion, the court reviewed the following fundamental tenets:

> The duty owed by the person in possession of land to others whose presence might reasonably be anticipated, is the duty to exercise reasonable care in the circumstances. The traditional classifications, "trespasser," "licensee" and "invitee," are simply convenient classifications for defining certain basic assumptions appropriate to the duty of the party in possession in the circumstances. These classifications help to define the real issue, which is what is the reasonable care under the circumstances?

*Id.* at 875.

The court also re-emphasized the principle controlling in the case at bar that the duty to a licensee extends only to conditions " 'that the licensee cannot reasonably be expected to observe, appreciate and avoid.' " *Id.*

The recent case of *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App.1996), is clearly fatal to the claims of the plaintiffs here. There, the Kentucky intermediate court affirmed the granting of summary judgment to a homeowner whose guest had suffered a broken neck in diving into the homeowner's residential swimming pool.

The court notes that the Kentucky summary judgment standards are far more stringent than those applying in the federal court. *Steelvest, Inc v. Scansteel Service Center*, 807 S.W.2d 476 (Ky.1991). Kurt A. Philipps, Jr., *Kentucky Practice*, Rule 56.03, comment 4

---

1. KRS 381.231(1) defines a trespasser as: "any person who enters or goes upon the real estate of another without any right, lawful authority or invitation, either express or implied." *See Kirschner v. Louisville Gas & Electric Co.*, 743 S.W.2d 840, 845 (Ky.1988). KRS 381.232 provides: "[t]he owner of real estate shall not be liable to any trespasser for injuries sustained by the trespasser on the real estate of the owner, except for injuries which are intentionally inflict-

ed by the owner or someone acting for the owner."

2. A licensee is one who comes upon the land with the consent of the possessor. An invitee is one who comes upon the land in some capacity connected with the business of the possessor. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App. 1996) (discussed *infra*).

(1996). Nevertheless, the *Scifres* court held that summary judgment was appropriate. In words controlling of the case at bar, the court reasoned:

> A possessor of land owes a licensee the duty of reasonable care either to make the land as safe as it appears, or to disclose the fact that it is as dangerous as he knows it to be. *There is no duty to warn a licensee of any danger or condition which is open and obvious or which should or could be observed by the licensee in the exercise of ordinary care.* As the trial court noted, a pool becomes unreasonably dangerous only when there is a hidden defect or dangerous condition posing a risk of death or serious bodily harm. The appellants have not alleged that any such hazard was present in the Krafts' pool. The danger of Scifres striking his head on the side of the pool opposite from where he dove was as evident to Scifres as to the Krafts. *The hosts were under no duty to warn their guests of a condition which was readily apparent.*

*Scifres,* 916 S.W.2d at 781 (citations omitted) (emphasis added).

▮ In the present action, Robby Elfers's parents both testified that Elfers knew the risk of jumping from a high bridge into an unknown body of water. As stated above, there were no hidden hazards in the water. The only risk was jumping from so great a height, a risk as obvious to the decedent as to anyone else.

Courts in Kentucky have recognized that bodies of water pose obvious hazards. In *Scifres, supra,* the court held that pool owners were under no obligation to warn a licensee of the dangers associated with a swimming pool because the dangers were "open and obvious." Similarly, the court in *Collins v. Rocky Knob Associates,* 911 S.W.2d 608, 611–12 (Ky.Ct.App.1995), stated that the risks of swimming in a lake "were natural and inherent to bodies of water" and "reasonably obvious." In the present action, plaintiffs attempt to distinguish these cases from the case at bar, arguing that the danger in the present case "was not the water[;] it was in diving into the water from the heights that the abutments allowed." [plaintiffs' Supp.Memo. at 6–7]. As a matter of logic, the added element of danger involved in jumping into the water only makes the hazard more open and obvious than the danger in the water itself.[3]

For these reasons, the court holds that the defendant Railroad, as owner of the bridge and its environs, owed no duty to the plaintiffs' decedent to alter the premises or warn him of its hazards, which were known and obvious.

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1. That the motion of defendant, CSX Transportation, Inc., for summary judgment (Doc. # 27) be, and it is, hereby **granted.** A separate Judgment shall enter concurrently herewith;

2. That the final pretrial conference of January 17, 1997 at 2:30 p.m. and the trial date of February 17, 1997 at 10:00 a.m. be, and they are, hereby **cancelled.**

---

**3.** Other states have held that both water and heights constitute open and obvious dangers. *See, e.g., Old Second Nat'l Bank v. Aurora Township,* 156 Ill.App.3d 62, 109 Ill.Dec. 31, 509 N.E.2d 692, 697 (Ill.App.Ct.1987) (stating that dangers associated with water and falling from heights should be obvious, even to younger children); *Beresford v. Starkey,* 563 N.E.2d 116, 122 (Ind.Ct.App.1990), *vacated on other grounds,* 571 N.E.2d 1257 (Ind.1991) (noting that dangers inherent in a body of water, including varying depths, are open and obvious); *Swanson v. McKain,* 59 Wash.App. 303, 796 P.2d 1291, 1295 (1990) (concluding that "risks associated with natural bodies of water are open and apparent").